UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 24-cr-224-(LLA) |
| NICHOLAS ORTT | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Nicholas Ortt to thirty months of incarceration, three years supervised release, $2000 in restitution, and a $100 mandatory special assessment for his felony conviction. The requested 30-month prison sentence falls on the high end of the 24-30 month sentencing guidelines calculation agreed to by the government and Ortt as part of his plea and balances the factors articulated in 18 U.S.C. § 3553.

## I.    INTRODUCTION

The defendant, Nicholas Ortt, a 43-year-old bar manager, forcefully participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and

1

resulted in more than 2.9 million dollars in losses.[1]

Ortt joined the Capitol riot on the West Front, where he was one of the initial rioters who breached a police line assembled to stop the mob from advancing through Capitol grounds at 2:28 p.m. To move through the police line, Ortt assaulted police – at one point grabbing an officer's baton – as he pushed through police shields and past officers struggling to keep the line intact.

Ortt's actions were the lynchpin of the collapse of the police line on the West Front.   After Ortt moved through the line, officers diverted resources to stop Ortt's forward movement while other officers struggled to manage the flood of rioters. Within seconds of Ortt successfully pushing past a group of officers, the police line that stretched across the West Front – and prevented the mob from advancing on the Capitol for nearly an hour and a half – collapsed. Thousands of rioters flooded deeper onto Capitol grounds, including the Lower West Terrace, where some of the most violent assaults against police occurred on January 6, 2021.

The government recommends that the Court sentence Ortt to 30 months of incarceration for his conviction of violating 18 U.S.C. § 111(a)(1). A 30-month sentence reflects the gravity of Ortt's conduct on January 6, 2021, as well as his routine disregard for the rule of law.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

**FACTUAL BACKGROUND**

    **A.**       **The January 6, 2021 Attack on the Capitol**

        The government refers the court to the stipulated Statement of Offense filed in this case, ECF 23, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election. The attack resulted in substantial damage to the Capitol, resulting in losses of more than 2.9 million dollars.

    **B.**       **Ortt's Role in the January 6, 2021, Attack on the Capitol**

                      *Pre-January 6 and Approach to the Capitol*

        Nicholas Ortt was a supporter of the former president. When the former president lost the 2020 election, Ortt became frustrated with the results. In the days preceding January 6, 2021, Ortt made plans to attend the former president's "Stop the Steal" rally to protest the results of the election. On January 6, 2021, Ortt traveled from his residence in Maryland to Washington D.C., where he attended the rally.

        After Ortt attended the rally, he walked with a crowd to the Capitol, where he observed police barricades and eventually made his way to the West Plaza of the Capitol. Ortt knew Congress was certifying the Electoral College at the Capitol on January 6, 2021, and, as part of the certification, vice-president Mike Pence was present at the Capitol.

        Prior to Ortt's arrival at the Capitol, at approximately 12:50 p.m., rioters breached barricades assembled on the perimeter of the northwest Capitol grounds near the Peace Circle.[2]

---

[2] The Capitol building and its surrounding grounds were closed to visitors on January 6, 2021 and

Police attempted to hold the mob back, but they were quickly overwhelmed at this location. In response, these officers retreated to the West Plaza.

As rioters began arriving on the West Plaza, the retreating officers formed a police line to prevent rioters from advancing closer to the Capitol building. At approximately 1:15 p.m., officers from the Metropolitan Police Department (MPD) arrived to reinforce U.S. Capitol Police on the West Plaza. Over the next hour, the mob on the West Plaza continued to grow and officers along the police line were subjected to repeated harassment and assaults as rioters made continued attempts to breach the police line. Nonetheless, the police line one the West Plaza generally held until 2:28 p.m., successfully preventing the mob's advance until this time.

### *Ortt's Breach of the Police Line and Assault on Officers*

Once Ortt arrived at the Capitol, he traveled through the mob to the police line on the West Plaza. At approximately 2:28 p.m., Ortt and other rioters on the north side of the West Plaza breached the police line and facilitated the mob's attack on the Capitol.

---

a restricted perimeter had been established around its grounds in anticipation of the Vice President's visit and the certification of the 2020 election.[2] The restricted perimeter was made clear to the public through linked, metal bike-rack barriers and snow fencing, much of which bore signs that read "Area Closed By Order of the United States Capitol Police Board" ("Area Closed signs"). Bike-rack barriers were placed on the sidewalk next to the road at Peace Circle, a traffic circle at the end of Pennsylvania Avenue on the northwest side of the Capitol grounds to mark the western boundary of the restricted area. The weight of each bike rack is approximately 25 to 50 pounds. Additional barriers were established within the outer perimeter to further restrict access to the building. One such barrier was a barricade of bike-racks, reinforced with snow fencing and zip ties, with several Area Closed signs attached, that barred the way up the Pennsylvania Walkway towards the Capitol building. The Pennsylvania Walkway is a footpath that runs from the West Plaza of the Capitol building to the sidewalk at the road in Peace Circle.

To achieve this end, Ortt sought to expose the line's vulnerability by pushing past and assaulting the vastly outnumbered police officers who tried to hold the line intact. *Image 1*, depicted below, showed Ortt, who is six feet, four inches tall and weighs 280 pounds, PSR ¶ 76, as one of the first rioters who fought with officers at this location.



*Image 1: Ortt fighting officers as he tried to move through the police line.*

As Ortt attempted to shove his way through the police line, he assaulted and struggled with several officers trying to maintain the line. *Image 2* captured Ortt as he grabbed and pushed against a police shield. *Image 3* showed Ortt at the forefront of efforts to breach the line in this location.



*Image 2: Ortt grabbing a police shield.*



*Image 3: Ortt leading efforts to push through the police line.*

While Ortt smashed his way through the police line, he fought with officers and grabbed their batons as they struggled to turn back attacks by other rioters behind Ortt. *Image 4* and *5* showed Ortt grabbing officers' batons. *Image* 6 showed Ortt grapple with officers inside the perimeter of the police line.



*Image 4: Ortt grabbing an officer's baton.*



*Image 5: Ortt grabbing an officer's baton.*



*Image 6: Ortt fighting with officers inside the perimeter of the police line.*

Once Ortt breached the line, he continued to wrestle with officers. These efforts

prevented officers from reinforcing the collapsing line. *Image 7* and *8* showed Ortt confronting

7

officers while other officers behind Ortt struggled to hold the line and prevent the mob from advancing.



*Image 7: Ortt confronting officers inside the perimeter of the police line.*



*Image 8: Ortt impeding officers inside the perimeter of the police line.*

Police officers forced Ortt back into the crowd, but the damage had been done. Seconds after Ortt broke through the line of officers, the line collapsed, and the mob flooded onto the Lower West Terrace and toward the Capitol building. On the Lower West Terrace, the mob surrounded the entry way to the Inauguration Tunnel Entrance ("Tunnel"), the scene of some of

the violent attacks by rioters against police on January 6, 2021. For approximately the next two

and a half hours, officers in the Tunnel were faced with a barrage of violent assaults – including

many from makeshift weapons – by rioters who had advanced from the West Plaza to the Lower

West Terrace following the collapse of the police line at 2:28 p.m.

### Ortt's Statements on Social Media

Law enforcement officials obtained search warrants for Ortt's Facebook account. He used

that account to post messages about his criminal activities at the Capitol on January 6, 2021. At

approximately 4:07 p.m. on January 6, 2021, Ortt posted *Image 9* to his Facebook account

depicting him at the Capitol with another rioter brandishing a stolen Capitol Police riot shield.



*Image 9: Ortt posing with other rioters at the Capitol.*

In other Facebook posts later that afternoon, Ortt refenced his actions at the Capitol. For

example, at 5:24 p.m. Ortt posted a message on Facebook that stated, "Using a friend's phone,

lost my phone pushing forward." Several minutes later at 5:27 p.m. Ortt commented, "Never was prouder to be part of it." At 5:40 p.m., Ortt commented, "Trust me I was there at the front lines."

Later in the evening, at approximately 9:00 p.m., Ortt posted, "You should have been there today brother." Ortt also shared *Image 10* on his Facebook account.

The Constitution
Actually says you
Can legally
Overthrow your
Government if they
Are tyrannical

*Image 10: Posted to Ortt's Facebook account on January 6, 2021*

And, at another point, Ortt posted the below meme on his Facebook account reading "Resist Like It's 1776."



*Image 11: Posted to Ortt's Facebook account on January 6, 2021*

## II.      THE CHARGES AND PLEA AGREEMENT

On May 9, 2024, the United Sates charged Ortt by a one-count Information with violating 18 U.S.C. § 111(a)(1) pursuant to a plea agreement. On May 23, 2024, the Court convicted Ortt of this offense based on a guilty plea entered pursuant to a plea agreement.

## III.     STATUTORY PENALTIES

Ortt now faces sentencing on 18 U.S.C. § 111(a)(1), assaulting, resisting, or impeding certain officers or employees.

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Ortt faces up to 8 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

## IV.      THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The government concurs with the PSR's guidelines calculation. PSR ¶¶ 38-48. That Guidelines analysis is as follows:

Count One: 18 U.S.C. § 111(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[3] | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |
| | **Total** | **20** |

---

[3] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

|  |  |
|---|---|
| Acceptance of responsibility (U.S.S.G. §3E1.1) | <u>-3</u> |
| **Total Adjusted Offense Level:** | **17** |

In the plea agreement, the parties agree to the same Guidelines calculation. *See* Plea Agreement at ¶¶ 5(A).

The U.S. Probation Office calculated Ortt's criminal history as category I, which is not disputed. PSR ¶ 51. Accordingly, Orrt's Guidelines imprisonment range is 24 to 30 months' imprisonment.

## V.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a term of incarceration at the high end of the Guidelines.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Ortt's's felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Ortt traveled to the Capitol's West Front where he was one of the first rioters to breach the police line at 2:28 p.m., leading to its collapse. This allowed an onslaught of rioters to ascend to the inauguration stage, where many of them engaged in brutal, hand-to-hand combat with police. Ortt's conduct was violet and created the circumstances that exposed officers to future violence. Ortt's conduct, in conjunction with Ortt's general disregard for the rule of law, and additional misconduct while on release following his plea hearing, fully

supports the government's recommended sentence of 30 months.

**B.  Ortt's History and Characteristics**

Ortt has a history of employment in the restaurant industry and currently works as a bar manager at The Food Market in Columbia, Maryland. PSR ¶ 95-99. According to numerous witnesses interviewed by the Federal Bureau of Investigation during this investigation, Ortt, "has a temper like you would not believe" and is often untethered to the truth, lying about rather mundane topics to create a false sense of grandiosity. He has previously made false representations regarding a history of service in the United States Marine Corps, despite never having served. Ortt also made misrepresentations to Probation concerning his use of alcohol. Ortt told Probation that as of May 2024, he discontinued alcohol entirely and has been sober for approximately two months. PSR ¶ 86. Yet, Ortt was arrested on June 14, 2024, for driving under the influence of alcohol, and subsequent drug testing while Ortt remained on release contained alcohol metabolites.

Similarly, Ortt told Probation that he pays $1,800 a month in child support and seeks leniency from the Court given his joint custody arrangement. PSR ¶ 69-70. However, Ortt routinely fails to make support payments to his ex-girlfriend for his two children, resulting in numerous family court appearances in Maryland concerning Ortt's lack of support. As of August 22, 2024, Ortt owed over $49,000 for missed child support payments. He has been ordered by the Court to pay $300 a month in arrears – in addition to his regular monthly child support payment – given his failure to support his children. He routinely fails to make both payments. He is also delinquent on Court orders to pay over $46,000 for legal and attorney's fees related to his child support case. Additionally, Ortt is under Court order to pay 54.5% of medical expenses for the children, but routinely fails to comply.

Ortt's disregard for his child custodial obligations – and the associated Court orders – is consistent with his cavalier approach to the law and history of arrest, exemplified by his failure to comply with his release conditions following his guilty plea on May 23, 2024. On June 14, 2024, while Ortt was under conditions of release, including a curfew and a requirement to not violate any local, state, or federal law, the Maryland State Police arrested him for driving under the influence at 3:09 a.m.[4] Approximately two hours later, following Ortt's release from custody, Howard County Police responded to a report of a domestic incident involving Ortt and his girlfriend.[5] Ortt continued to violate his release conditions following this incident.[6]

Given this conduct, at the June 2, 2024, revocation hearing, this Court addressed Ortt's disregard for the law and questioned his decision making. While the Court did not remand Ortt at this hearing, the Court expressed concern regarding Ortt's representation of the events on June 14, 2024, and placed him on additional restrictions that he continued to violate.[7]

Ortt has been arrested several times for conduct that did not result in convictions. *See* PSR ¶ 50, 53, 54, 55, and 56. Ortt's crimes on January 6, 2021 were not an isolated event in an otherwise

---

[4] Ortt traveled to seven different locations earlier in the evening before his arrest. PSR ¶ 11.

[5] Under the conditions of Ortt's release, the Court required him to report any contact with law enforcement to Probation Services. Ortt failed to report either law enforcement encounter on June 14, 2024, to Probation Services during a subsequent report on June 20, 2024, and June 29, 2024. PSR ¶ 11.

[6] Ortt returned to his residence on June 30, 2024, at 1:37 a.m. in violation of the Court imposed curfew order from 1 a.m. to 3 a.m. daily. PSR ¶ 12.

[7] Ortt tested positive for a THC Metabolite on July 26, 2024, in violation of his release conditions concerning use of a controlled substance. PSR ¶ 89 Additionally, the same testing yielded positive results for Ethyl Glucuronide and Ethyl Sulfate in violation of additional restrictions imposed on the defendant on July 2, 2024, regarding Ortt's use of alcohol. PSR ¶ 13

law-abiding life. Instead, they were consistent with Ortt's cavalier view of the law, exemplified by his post plea arrest when Ortt knew he was under strict conditions of release pending sentencing. These acts, including his history of police encounters and arrests, weigh heavily in favor of a lengthy term of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Ortt's criminal conduct on January 6 was the epitome of disrespect for the law. *See* United States v. Cronin, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[8] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

---

[8] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

First, although Ortt has a criminal history category of I, his history of encounters with police – including arrests for assaultive conduct – and willingness to avoid court proceedings shows a clear pattern of evading justice and otherwise concerning behavior. In fact, interviews with witnesses during the investigation into Ortt's conduct on January 6 revealed that Ortt has used different spelling of his first name over the years, switching between "Nicholas" and "Nichalos" to evade law enforcement officials.

If the Court needed any evidence of the need for specific deterrence in this case, it should look to the incident on June 14, 2024, following Ortt's plea of guilty. Despite unequivocal release conditions, Ortt chose to drive under the influence of alcohol in the middle of the night, nearly colliding with a tractor trailer. Following his release by authorities that evening, officers responded to an additional domestic incident involving Ortt and his girlfriend.

Specific to his actions on January 6, 2021, although Ortt has now expressed remorse and contrition, his social media statements during the riot were those of an individual excited about the events that day. Ortt stated that he "Never was prouder to be part of it," bragged about being on the "front lines," and boasted about overthrowing a tyrannical government. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide

16

were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). Ortt's own statements demonstrate the sentence must be sufficient to deter him from committing future crimes.

### E.    The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and

consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[9] "When an offense is uniquely serious,

---

[9] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[10] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *U.S. v. Daniel Phipps*, 21-cr-44 (CJN), the defendant, like Ortt, assaulted multiple officers by pushing them (and grabbing a baton) but not otherwise attacking them or using weapons. Both defendants made inflammatory statements on social media after January 6. Both accepted responsibility via plea. While Phipps entered the Capitol and Ortt did not, Phipps assaulted officers outside the Capitol long after he left the building, and so did not accelerate the storming of the Capitol building by a dangerous mob, as Ortt did.[11] Judge Nichols sentenced Phipps to 27 months' incarceration and 36 months' probation for conduct similar to Ortt's. But Phipps did not flagrantly violate the conditions of his release like Ortt did, and these violations counsel for a harsher sentence.

---

[10] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

[11] Phipps pled guilty to an indictment that included one count of violating 18 U.S.C. § 231(a)(3) and four misdemeanor charges in addition to the top count of violating 18 U.S.C. § 111(a). The Court calculated Phipps' guidelines range to be 24-30 months, the same range as Ortt's.

*United States v. Kevin Creek*, 21-cr-645-DLF, also involved a defendant who pled guilty to one count of violating 18 U.S.C. § 111(a)(1) and faced a guidelines range of 24-30 months incarceration. While on the Lower West Terrace, Creek shoved one officer and kicked another, and threw a thick strap with a metal buckle at the line of officers but did not injure the officers. Like Ortt, Creek never entered the Capitol. Judge Friedrich sentenced Creek to 27 months' imprisonment and 12 months supervised release.

## VI.    RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[12] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[12] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Ortt must pay $2,000 in restitution, which reflects in part the role Ortt played in the riot on January 6.[13] Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Ortt's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 128.

## VII.   FINE

Ortt's convictions for violations of 18 U.S.C. § 111(a)(1) subject him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Ortt's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, Ortt's financial assets set forth in the PSR suggest he is unable, and is unlikely to become able, to pay a fine. PSR ¶¶ 108.

## VIII.  CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a

---

[13] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

sentence of 30 months of incarceration, three years supervised release, $2000 in restitution, and a

$100 mandatory special assessment for his felony conviction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


BY:     */s/ Eli J. Ross*
        Eli Ross
        Assistant United States Attorney
        Bar No. IL 6321411
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        Phone: (202) 297-1515
        Email: Eli.Ross@usdoj.gov